**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Heather C., Appellant,

v.

Kevin C., Respondent,

South Carolina Department of Social Services, Plaintiff,

v.

Kevin C. and Heather C., Defendants,

In the interest of children under the age of 18 years.

Appellate Case No. 2012-212799

Appeal From Greenville County
Usha J. Bridges, Family Court Judge

Unpublished Opinion No. 2013-UP-392
Heard September 9, 2013 – Filed October 16, 2013

**AFFIRMED**

N. Douglas Brannon, of Turnipseed & Brannon Law
Firm, of Spartanburg, for Appellant.

Joseph M. Ramseur, Jr., and Danielle Metoyer Mitchell, of Mitchell Ramseur, LLC, of Greenville; and Tanya Amber Gee, of Nexsen Pruet, LLC, of Columbia; for Respondent.

---

**PER CURIAM:** Heather C. (Mother) appeals from the family court's order of intervention, arguing the court changed and added terms to the parties' agreement that were not agreed upon. We affirm pursuant to Rule 220(b), SCACR, and the following authorities:

1.      Mother argues the family court erred in allowing Father to begin visitation immediately with Children because the parties' agreement was to permit the therapist to begin Children's therapy immediately with the discretion to allow Father to attend therapeutic visitation if the therapist deemed the visitation appropriate. We find no error with the family court's final order with regard to the provision concerning Father's visitation because the court interpreted the agreement in light of the parties' situation and their purposes in entering into the agreement. *See Mattox v. Cassady*, 289 S.C. 57, 61, 344 S.E.2d 620, 622 (Ct. App. 1986) (holding that to ascertain the parties' intentions to a settlement agreement, the court should attempt to determine the situation of the parties and their purposes at the time the contract was entered). During the hearing, Father stated that "in terms of the therapeutic visitation under the direction of [Children's therapist], that would be effective immediately . . . subject to [Children's therapist's] guidance." The family court asked Mother whether she agreed with this provision, and Mother stated she understood Children would see the therapist immediately, but that therapeutic visitation would not begin until Children's therapist deemed it appropriate. Mother did not object when Father stated on the record that the parties agreed Children's therapist would be the "gatekeeper of any and all concerns of the children or the parents as it relates to visitation." The final order states that Children's therapist "shall determine the course of reunification" and visitation "will begin with therapeutic visitation at [Children's therapist's office] when she deems it appropriate."[1] The final order also provides Mother may petition the family court to review the issue of visitation at any time, which gives

---

[1] At oral argument, Father conceded the final order does not go beyond therapeutic visitation, and if Father wants more than therapeutic visitation with Children, he will have to petition the court.

Mother a remedy if therapeutic visitation becomes problematic.  Thus, the final order gives effect to Mother's intentions for visitation because Father cannot have visitation with Children until Children's therapist deems it appropriate.

2.      Mother argues the family court improperly divested its authority to Children's therapist by allowing her to determine the visitation plan.  In *Stefan v. Stefan*, 320 S.C. 419, 421-22, 465 S.E.2d 734, 736 (Ct. App. 1995), the family court directed that the guardian ad litem's (GAL's) approval would be required before the father could resume visiting his children, and the GAL could recommend any changes in visitation.  This court found the family court erred in delegating the responsibility of creating a visitation plan to the GAL and the parenting specialist.  *Id.*  Additionally, this court noted the family court erred in suspending the father's visitation rights without a GAL's recommendation that it would be in the children's best interest.  *Id.* at 423, 465 S.E.2d at 737.  We find this case is distinguishable from *Stefan* because the family court's approval of the parties' settlement agreement does not equate to a delegation of the family court's "authority and responsibility for protecting the interest of minors involved in litigation."  *See id.* at 422, 465 S.E.2d at 736.  Here, Mother and Father, not the family court, made the decision to allow Children's therapist to determine Father's therapeutic visitation with Children.  The parties' agreement was placed on the record, attested to by both parties, and approved in its entirety by the family court as being in the best interests of the children.  Furthermore, the order provides the parties may petition the family court at any time to review Father's progress with visitation.  Thus, the family court has retained authority to make changes to Father's visitation.

3.      Mother argues she agreed for Linda Hutton to replace Children's prior counselor and for Children to have adequate closure with their prior counselor; however, the court adopted language that was different from the agreement stated in the transcript.[2]  We find no error with the family court's final order with regard to the provision concerning Children's therapist because the court interpreted it in light of the parties' purposes in entering into the agreement.  *See Nicholson v. Nicholson*, 378 S.C. 523, 532, 663 S.E.2d 74, 79 (Ct. App. 2008) (holding the family court's only function with an agreement that is clear and capable of legal construction is to interpret its lawful meaning and the intention of the parties as

---

[2]  At oral argument, Father informed the court that Hutton is no longer Children's therapist, and the family court has appointed a new therapist for Children.

found within the agreement and to give them effect). The parties agreed on the record that Hutton would replace Meredith Thompson-Loftis as Children's counselor, and the final order provides that "Hutton shall be the exclusive therapist for the minor [C]hildren, providing counseling and therapy for [C]hildren, and immediately replacing [Thompson-Loftis], who is [C]hildren's current therapist." Further, the order provides for one joint meeting with both therapists and Children "to ensure a smooth transition for the minor [C]hildren." Thus, the final order gives effect to Mother's intentions concerning the replacement of Children's therapist.

4.      Mother argues the parties agreed Children's therapist could suggest therapy for Mother, but the family court's order incorrectly mandated that Mother must attend therapy. We find no error with the family court's final order with regard to the provision concerning Mother's therapy because the court interpreted it in light of the parties' situation and their purposes in entering into the agreement. *See Marshall v. Marshall*, 282 S.C. 336, 342, 318 S.E.2d 133, 137 (Ct. App. 1984) ("As with any other contract, where the language of a marital agreement is susceptible of more than one interpretation, it is the duty of the Family Court Judge to ascertain the intentions of the parties."). The final order provides that "Mother *shall* participate [in] any psychological or psychiatric assessment recommended by [Children's therapist]." (Emphasis added.) Mother argues the family court should not have ordered her to attend therapy. However, during the hearing, Father stated "[Children's therapist] will also have the role and the right to suggest if [Mother] *should* seek out further psychological or psychiatric assessment." (Emphasis added.) Mother did not object to this requirement. The family court concluded the parties vested Children's therapist with significant responsibility in reunifying Father and Children, and Children's therapist could determine if Mother's therapy would better serve Children's needs. The family court also found the agreement, which was endorsed by the GAL, was in the best interest of Children and reflected a fair resolution of the legal issues. Accordingly, the final order gives effect to the parties' intentions concerning Children's therapist's role in addressing Children's therapeutic needs.

5.      Mother argues the family court abused its discretion by initially refusing to adopt the restraining order against Father. Although the family court neglected to include a restraining order against Father in the final order, the family court prepared a supplemental order to include the restraining order. Accordingly, we find the family court properly addressed Mother's concerns about the lack of a restraining order, and this issue is moot. *See Seabrook v. Knox*, 369 S.C. 191, 197, 631 S.E.2d 907, 910 (2006) ("A moot case exists where a judgment rendered by

the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court."); *id.* ("If there is no actual controversy, this Court will not decide moot or academic questions.").

6. Mother argues the family court erred in finding she freely and voluntarily entered into the agreement. Mother raised this issue for the first time during the hearing on her motion to reconsider. She argued she was poorly represented by her attorney, she was coerced into settling the case, and she generally did not understand what she was doing when she agreed to the terms set forth in the order. However, during the December 13, 2011 hearing, Mother stated she agreed with the terms and provisions of the agreement, and she wanted the court to approve the agreement. She also stated she was satisfied with her attorney's services. Therefore, we find the court correctly found Mother freely and voluntarily entered into the agreement. *See Forsythe v. Forsythe*, 290 S.C. 253, 255-56, 349 S.E.2d 405, 406 (Ct. App. 1986) (holding the family court properly found the wife entered into an agreement freely and voluntarily because there was no evidence the agreement was not freely and voluntarily entered into: wife answered affirmatively that she understood the agreement, had entered into it of her own free will and accord, was not under duress or fear, and was satisfied with the services of her lawyer).

**AFFIRMED.**

**SHORT and THOMAS, JJ., and CURETON, A.J., concur.**